IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GARY EYE, | ) | |
| | ) | |
|     Petitioner, | ) | Civil Action No. 7:20cv00272 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| WARDEN J.C. STREEVAL, | ) | By:  Michael F. Urbanski |
| | ) | Chief United States District Judge |
|     Respondent. | ) | |

Gary Eye, a federal inmate proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Relying on 28 U.S.C. § 2255(e) and United States v. Wheeler, 886 F.3d 415, 419 (4th Cir. 2018), Eye seeks to invalidate his 2008 convictions and sentences for multiple charges in the United States District Court for the Western District of Missouri, Case No. 1:05cr00344. Respondent opposes the petition.

I.

Eye is in the custody of the Warden of United States Penitentiary ("USP") Lee. In 2008, Eye was convicted in the Western District of Missouri of eight counts of a superseding indictment charging him with interference with federally protected activities, witness and evidence tampering, and firearms crimes.[1]  He was sentenced to a total term of life

---

[1] Specifically, Eye was charged with two counts of interference with federally protected activities, in violation of 18 U.S.C. § 245(b)(2)(B) (Counts One and Three); tampering with a witness, in violation of 18 U.S.C. § 1512(a)(1)(C) and (a)(3)(A) (Count Five); obstruction of justice, in violation of 18 U.S.C. § 1519 (Count 7); use of fire to commit a felony, in violation of 18 U.S.C. § 844(h)(1) (Count Eight); and three counts of use or discharge of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Counts Two, Four, and Six). Dkt. No. 1-2 at 7-8. Count Six also charged petitioner with violation of § 924(j)(1) because the use or discharge of a firearm during a crime of violence caused death, specifically murder. Id. at 8.

1

imprisonment. Eye appealed, and the Court of Appeals for the Eighth Circuit affirmed the convictions and sentence. The Supreme Court denied certiorari.

In 2011, Eye filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255 in the sentencing court, which the court denied. He then filed a motion for reconsideration, which the district court also denied. Eye appealed the denial, but the Eighth Circuit denied a certificate of appealability.

Eye filed a second § 2255 motion in the sentencing court in 2014. The court dismissed the motion without prejudice as a second or successive motion to vacate for which Eye had not received leave from the Eighth Circuit to file. The Eighth Circuit subsequently denied leave.

Eye filed the current petition on May 11, 2020. He filed two motions to amend the petition, on May 13, 2020, and June 4, 2020, respectively, which the court granted. Eye also filed two motions for appointment of counsel, which the court denied. After requesting and receiving extensions of time, Respondent filed a response in opposition to the petition on September 1, 2020, arguing that the court lacks jurisdiction over Eye's claims. On September 28, 2020, Eye filed a reply to respondent's opposition, followed by a motion to amend his reply, which the court granted and treated as a supplement to the reply. Lastly, on June 1, 2021, Eye filed a motion for leave to file a motion and additional paperwork. The court denied the motion on July 6, 2021.

Eye presents seven claims in the instant petition, as amended.[2] He raises challenges to

---

[2] Eye's two amendments to the petition do not encompass the entire document. Accordingly, the court refers to the three filings separately.

his sentences pursuant to the First Step Act of 2018 and subsequent case law for use or discharge of a firearm during the commission of a crime of violence (Grounds One and Two); the jury selection process under Flowers v. Mississippi, 139 S. Ct. 2228 (2019), and Batson v. Kentucky, 476 U.S. 79 (1986) (Ground Three); his conviction and sentence under 18 U.S.C. § 1512(a)(1)(C) for witness tampering (Ground Four); his convictions under 18 U.S.C. §§ 924(c)(1)(a)(iii) and 18 U.S.C. § 1512(a)(1)(C) based on Rehaif v. United States, 139 S. Ct. 2191 (2019) (Ground Five); the government's failure to call the proper witnesses, in violation of the confrontation clause of the Sixth Amendment (Ground Six); and an illegal search and seizure, in violation of the Fourth Amendment (Ground Seven).[3]

## II.

A prisoner generally must file a motion under § 2255 to collaterally attack the legality of his detention under a federal conviction or sentence. 28 U.S.C. § 2255(a); Davis v. United States, 417 U.S. 333, 343 (1974). A district court cannot entertain a petition for a writ of habeas corpus under § 2241 challenging a federal court judgment unless a motion pursuant to § 2255 is "inadequate or ineffective to test the legality of [that inmate's] detention." 28 U.S.C. § 2255(e) ("the savings clause"); see Wheeler, 886 F.3d at 419; In re Jones, 226 F.3d 328, 333 (4th Cir. 2000). "[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a § 2255 motion." In re Vial, 115 F.3d 1192,

---

[3] Eye mistakenly labels his last two grounds as "Claim (5) Five" and "Claim (6) Six." Dkt. No. 7-1 at 1-2. However, he had previously labeled his Rehaif argument "Claim (5) Ground (5)." Dkt. No. 2-1 at 1. The court follows the order in which Eye submitted the additional claims.

1194 n.5 (4th Cir. 1997).[4]

In <u>Wheeler</u>, the Court of Appeals for the Fourth Circuit explained that where a petitioner is challenging the legality of his sentence (as opposed to his conviction) § 2255 will be deemed "inadequate or ineffective" only when all of the following four conditions are satisfied: (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for successive motions;[5] and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. 886 F.3d at 429. Section 2255 is "inadequate or ineffective" to test the legality of a conviction when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

<u>Jones</u>, 328 F.3d at 333-34. If any one of the requirements is not met, the court is deprived of

---

[4] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this memorandum opinion, unless otherwise noted.

[5] Section 2255(h) provides in relevant part that:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--

…

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

jurisdiction and may not "entertain[] [the petition] to begin with." Wheeler, 886 F.3d at 425; see also Ledezma-Rodriguez v. Brecken, No. 7:18-cv-00268, 2019 WL 4644556, at *2 (W.D. Va. Sept. 24, 2019) (quoting Wheeler, 886 F.3d at 425). Eye bears the burden of proving subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

In evaluating the substantive law in a § 2255(e) savings clause analysis, the court must "look to the substantive law of the circuit where a defendant was convicted." Hahn v. Moseley, 931 F.3d 295, 301 (4th Cir. 2019). The Missouri district court where Eye was convicted is within the Eighth Circuit. 28 U.S.C. § 41. Accordingly, while the court must apply the procedural standard in Wheeler and Jones, it must do so using Eighth Circuit substantive law. Hahn, 931 F.3d at 301.

### III.

As noted above, Eye raises a total of seven grounds for relief in his petition, first amended petition, and second amended petition. Where possible, the court has grouped his claims together.

A. Grounds One and Two

In Grounds One and Two, Eye challenges his enhanced sentences under § 924(c). By way of background, Eye was charged in Counts Two, Four, and Six with use or discharge of a firearm during a crime of violence pursuant to 18 U.S.C. § 924(c)(1)(A)(iii). Dkt. No. 1-2 at 7-8. Each charge related to another charge, Counts One, Three, and Five, respectively. Id. Eye was sentenced to 120 months imprisonment for Count Two, consecutive to his sentences for Counts One, Three, Five, Seven, and Eight; and life in prison for Counts Four and Six, to run consecutive to each other and to his sentences for all other counts (including Count Two).

See 18 U.S.C. § 924(c)(1)(D)(ii) ("Notwithstanding any other provision of law . . . no term of imprisonment imposed upon a person under this subsection shall run concurrently with any other term of imprisonment imposed upon the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.").

Section 924(c) provides in relevant part that:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). Further,

> In the case of a second or subsequent conviction under this subsection, the person shall--
>
> (i) Be sentenced to a term of imprisonment of not less than 25 years[.]
>
> . . . .

Id. § 924(c)(1)(C). Eye was sentenced to the mandatory minimum ten-year sentence under § 924(c)(1)(A)(iii) for Count Two because a firearm was discharged. Dkt. No. 1-2 at 7. He was then sentenced to two consecutive life sentences for the "second or subsequent conviction[s]"

6

in Counts Four and Six. See 18 U.S.C. § 924(c)(1)(D)(ii); United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020) ("Prior to the First Step Act, a conviction was treated as second or subsequent, triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case."). This practice was known as "stacking." McCoy, 981 F.3d at 275.

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), ended this practice "by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." Id. Under the First Step Act, then, "the 25-year mandatory minimum is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution." Id. (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)); see also United States v. Arey, 461 F. Supp. 3d 343, 349 (W.D. Va. 2020) ("Now, the enhanced mandatory minimum penalty for a second or any subsequent § 924(c) conviction applies only when an offender's first conviction under § 924(c) was final when the subsequent violation was committed.").

In Ground One of the petition, Eye correctly characterizes the First Step Act as a change in settled substantive law subsequent to his direct appeal and first § 2255 motion. Wheeler, 856 F.3d at 429; Dkt. No. 1-1 at 1-2; see also McCoy, 981 F.3d at 275 (describing First Step Act change to 924(c) "stacking" practice as a "monumental change to sentencing calculations"). However, that change "does not apply retroactively to sentences—like the defendant['s]—imposed before December 21, 2018, when the First Step Act became law." McCoy, 981 F.3d at 275. Eye was sentenced in 2008. Dkt. No. 1 at 1. Thus, Eye cannot satisfy Wheeler's second step, that the "aforementioned settled substantive law changed and

7

was deemed to apply retroactively on collateral review . . . ." Wheeler, 856 F.3d at 429. Accordingly, the court lacks jurisdiction over Eye's first ground for relief.[6]

Eye challenges the same § 924(c) sentences in Ground Two, but on a different basis. Eye claims relief based on a "recent law change," Dkt. No. 1-1 at 2, in two district court cases, United States v. Urkevich, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019), and United States v. Cantu, 423 F. Supp. 3d 345 (S.D. Tex. 2019). In the alternative, Eye requests compassionate release. Dkt. No. 1-1 at 2.

The First Step Act also changed the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). McCoy, 981 F.3d at 275. "Importantly, prior to the First Step Act, courts could consider compassionate release only upon motion by the BOP." Id. at 276. Section 3582(c)(1)(A) now provides in relevant part that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i)     Extraordinary and compelling reasons warrant such a reduction[.]
>
> . . .

18 U.S.C. § 3582(c)(1)(A); see also McCoy, 981 F.3d at 275.

In both Urkevich and Cantu, the defendants sought compassionate release pursuant to

---

[6] Eye also alleges that Counts One, Three, and Five were also illegally stacked. Dkt. No. 1-1 at 2. However, the Eighth Circuit rejected this claim on direct appeal. United States v. Sandstrom, et al., 594 F.3d 634, 650-55 (8th Cir. 2010), cert. denied, 181 S. Ct. 192 (2010).

8

§ 3582(c)(1)(A)(i). Urkevich, 2019 WL 6037391, at *1; Cantu, 423 F. Supp. 3d at 349. After considering the appropriate factors, the courts granted their requests. Urkevich, 2019 WL 6037391, at *4; Cantu, 423 F. Supp. 3d at 355. Although these cases are not binding on this court, the Fourth Circuit, in its recent decision in McCoy, affirmed the district courts' grant of compassionate release in the consolidated appeals before it, McCoy, 981 F.3d at 288;[7] see also United States v. Arey, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) (finding that dramatic change to § 924(c) constitutes extraordinary and compelling reason). The Fourth Circuit explained:

> In sum, we find that the district courts permissibly treated as extraordinary and compelling reasons for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act. We emphasize, as did the district courts, that these judgments were the product of individualized assessments of each defendant's sentence. And we note that in granting compassionate release, the district courts relied not only on the defendants' § 924(c) sentences but on full consideration of the defendants' individual circumstances.

McCoy, 981 F.3d at 286.

Although § 3582(c)(1)(A)(i) may be used to seek relief from "stacked" § 924(c) sentences in individual cases, see Arey, 461 F. Supp. 3d at 350 (citing cases), this court cannot grant Eye's request for compassionate release for two reasons. First, § 3582(c)(1)(A), not § 2241, is the appropriate vehicle for bringing a motion for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Second, a motion for compassionate release or sentence reduction under § 3582(c) must be filed in the sentencing court. See United States v. Raia, 954 F.3d 594, 596 (3d

---

[7] Respondent requested a stay of proceedings until the Fourth Circuit had decided McCoy. Dkt. No. 13 at 7. The circuit court issued its decision on December 2, 2020. McCoy, 981 F.3d 271 (2020). Therefore, respondent's request is moot.
  Respondent also asked that the court allow supplemental briefing after the McCoy opinion was issued. Dkt. No. 13 at 7. Based on its disposition of petitioner's first and second grounds for relief, the court finds that supplemental briefing is unnecessary.

Cir. 2020) ("Section 3582's text requires those motions [for compassionate release] to be addressed to the sentencing court, a point several Circuits have noted . . . ."); United States v. Sudduth, No. 5:14-CR-224, 2021 WL 190914, at *1 (E.D.N.C. Jan. 19, 2021) ("Section 603 of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to provide that a defendant may request compassionate release from the sentencing court after exhausting his administrative remedies."). Therefore, this court lacks jurisdiction over Eye's request in the alternative for compassionate release.

B. Ground Three

Next, Eye argues that he is entitled to relief based on Flowers v. Mississippi, 139 S. Ct. 2228 (2019). He characterizes Flowers as "a recent Supreme Court ruling that is a[n] avenue of relief under a Batson[8] claim." Dkt. No. 1-1 at 3. He is mistaken.

In Flowers, the Supreme Court addressed the facts of Flowers' case "[i]n accord with the principles set forth in Batson . . . ." 139 S. Ct. at 2244. The Court was clear that, in reaching its conclusion that the trial court committed clear error in finding that the State's peremptory strike of a black prospective juror "was not motivated in substantial part by discriminatory intent," id. at 2235, "we break no new legal ground. We simply enforce and reinforce Batson by applying it to the extraordinary facts of this case," id.; see also id. at 2251 (same).

To repeat, Wheeler requires at step two that "subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed . . . ." Wheeler, 886 F.3d at 429; see also Jones, 226 F.3d at 334 (same). Here, the decision that changed settled substantive law with respect to the use of peremptory strikes in jury selection was Batson, as

---

[8] Batson v. Kentucky, 476 U.S. 79 (1986).

10

the Flowers Court recognized. Flowers, 139 S. Ct. at 2242-43 ("Batson immediately revolutionized the jury selection process that takes place every day in federal and state criminal courtrooms throughout the United States."). Flowers broke no new legal ground; it simply "enforce[d] and reinforce[d] Batson . . . ," id. at 2235; see also id. at 2251. Therefore, because Eye points to no change in substantive law subsequent to his direct appeal and first motion to vacate, he may not make use of the "savings clause," and the court is deprived of jurisdiction over his third claim for relief.

    C. Ground Four

In Ground Four, Eye challenges his conviction for witness tampering under 18 U.S.C. § 1512(a)(1)(C), which "makes it a crime to kill another person, with intent to prevent the communication by any person to a law enforcement officer of the United States of information relating to the possible commission of a Federal offense." Fowler v. United States, 563 U.S. 668, 670 (2011) (quoting 18 U.S.C. § 1512(a)(1)(C)). In Fowler, the Supreme Court held that in a case where the defendant does not have a particular law enforcement official in mind, "the Government must show a *reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." Id. at 677.

Eye claims that he is "entitled to relief based upon United States v. Chatman, [952 F.3d 1211 (10th Cir. 2020)]." Dkt. No. 1-1 at 4. He continues, "Chatman is a case based upon Fowler v. U.S., 563 U.S. 668 (2011)," id., "which Petitioner filed under Fowler in 2011 but it was denied by the District Court," id. According to Eye, he raised the issue in a "timely § 2255 motion." Id. Eye seeks to raise this claim again under both cases because "Fowler changed the

11

elements of a crime," id., thereby rendering his indictment for Count Five illegal as well as the related § 924(c) charge in Count Six, see id. He claims that "the same argument applies for Count[s] 7 and 8 of [the] indictment." Id.

Eye's own words demonstrate the court's lack of jurisdiction over Ground Four. Fowler was the case which "changed the elements of a crime," id., not Chatman. Chatman merely followed the Supreme Court's holding in Fowler. See Chatman, 952 F.3d at 1212-16. Further, Eye acknowledges that he raised the claim previously and was denied. Dkt. No. 1-1 at 4. Thus, as above, Eye cannot meet the requirement set forth in Step Two of Wheeler, see Wheeler, 886 F.3d at 429 ("subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned substantive law changed . . ."); see also Jones, 226 F.3d at 334, thereby depriving the court of jurisdiction over the claim.

D. Ground Five

In Ground Five, Eye again challenges his convictions under 18 U.S.C. § 924(c), as well as his convictions for "tampering with a Federal witness, obstruction of Justice, and furthermore 18 U.S.C. [§] 245(b)," Dkt. No. 2-1 at 2, based on the Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191 (2019), see Dkt. No. 2-1 at 1. According to Eye, he had a "mistaken impression concerning the legal effect of some collateral matter and that mistake result[ed] in his misunderstanding the significance of his conduct . . . ." Id. at 2.

Rehaif addressed 18 U.S.C. § 922(g), which "provides that it shall be unlawful for certain individuals to possess firearms. The provision lists nine categories of individuals subject to the prohibition, including felons . . . . A separate provision, § 924(a)(2), adds that anyone who *knowingly* violates the first provision shall be fined or imprisoned for up to 10 years." Rehaif,

139 S. Ct. at 2194; see also 18 U.S.C. § 922(g). In Rehaif, the Supreme Court held that "the word knowingly applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194.

Rehaif does not provide the court with jurisdiction over Eye's claim. First, and most obvious, Eye was not convicted of violating § 922(g). Therefore, Rehaif does not represent a change in settled substantive law which renders the conduct for which Eye was convicted illegal, and Eye cannot satisfy the second condition under Wheeler and Jones. See Wheeler, 886 F.3d at 429; Jones, 226 F.3d at 334.

Eye attempts to generalize Rehaif's holding regarding knowledge of status under § 922(g) to any crime requiring knowledge of status. For example, he argues that the indictment, jury instructions, and comments made by the trial judge and prosecutors failed to require the jury to find that he was a racist or committed the crimes charged in 18 U.S.C. § 245(b) based on race. Dkt. No. 2-1 at 1. Rehaif's holding, however, was limited to § 922(g). See Rehaif, 139 S. Ct. at 2195 ("The text of § 924(a)(2) says that whoever knowingly violates *certain subsections of § 922, including 922(g),* shall be subject to penalties of up to 10 years' imprisonment.") (emphasis added); id. at 2200 ("We express no view . . . about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here."). Eye has pointed to no case in which the Supreme Court has extended Rehaif to other statutes, and the court is aware of none.

To the extent Eye relies in the alternative on United States v. Lockhart, 947 F.3d 187 (4th

Cir. 2020), see Dkt. No. 2-1 at I, that case is distinguishable. For starters, Lockhart was convicted of possession of a firearm by a convicted felon in violation of § 922(g). Lockhart, 947 F.3d at 190. He received an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Id. Second, Lockhart was before the Fourth Circuit on direct appeal, not collateral review. See id. In addition, Lockhart involved a guilty plea, not a conviction after trial. Id. at 190-91. Lastly, it was the combination of an error during the plea colloquy (being misinformed as to his potential sentence exposure) and a Rehaif error that led the appellate court to vacate Lockhart's conviction and remand the case to the district court for further proceedings. Id. at 196-97.

In short, Eye has provided the court with no basis on which to exercise jurisdiction over Ground Five.

E. Grounds Six and Seven

Lastly, Eye raises claims under the Sixth Amendment's confrontation clause and the Fourth Amendment's prohibition of unreasonable searches and seizures, respectively. Eye argues that the government failed to call the "proper expert[s]," Dkt. No. 7-1 at 1, to testify at his trial, but simply entered their reports into evidence, thereby violating his right to confront witnesses against him, see id. He further argues that he was subjected to an illegal search and seizure and/or an illegal arrest and detention, in violation of the Fourth Amendment. Id. at 2.

With respect to Eye's confrontation clause argument, Eye states that none of the experts who authored the original reports, including ballistics, DNA, and autopsy reports, "were able to testify at any hearing or trial . . . ." Id. at 1. Eye argues that "the Government violated [his]

14

rights to confront the expert[s] that conducted test[s] of evidence and produced lab reports that were allowed into trial by the Court." Id. Eye appears to rely on new case law, including Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), to support his argument that his Sixth Amendment rights were violated, see Dkt. No. 7-1 at 1 (citing cases).

As to his Fourth Amendment claims, Eye challenges his arrest, and the events leading thereto, in Independence, Missouri, on March 16, 2005. Dkt. No. 7-2 at 1. On that date, officers from the Kansas City and Independence police departments conducted a residence check at an address in Independence, looking for a specific individual (not Eye). Id. After surrounding the residence, pounding on the door, and demanding that the occupant(s) "open up," the officers made contact with a juvenile, who allowed them to enter the residence. Dkt. No. 7-1 at 3; Dkt. No. 7-2 at 1. Although the officers did not locate the person they were seeking, they found Eye, who gave them a false name. Dkt. No. 7-1 at 3; Dkt. No. 7-2 at 1. Although the name came back "clean," with no outstanding warrants, Dkt. No. 7-1 at 3, the reporting officer then contacted a probation and parole officer to obtain a list of tattoos a suspect in a homicide had, compared them to Eye's tattoos, and determined that Eye was the suspect wanted for questioning as well as for a probation absconder felony warrant, Dkt. No. 7-2 at 1. Eye was then arrested. Id.

Eye challenges the search and subsequent arrest on numerous grounds under the Fourth Amendment. Dkt. No. 7-1 at 3. It is clear, however, that Eye is raising constitutional arguments. The same is true for his confrontation clause contention. Constitutional arguments have no place within Wheeler's framework. Wheeler and Jones both involved statutory, not constitutional, decisions. See Wheeler, 886 F.3d at 430 (noting that petitioner

15

was "unable to satisfy the requirements of § 2255(h)(2) because Simmons[9] was a statutory decision . . ."); id. at 426-27 ("Unable to file a second or successive § 2255 motion because Bailey[10] was a statutory (not a constitutional) decision, Jones attempted to file a § 2241 claim for relief by using the savings clause portal." (citing Jones, 226 F.3d at 329-30)); see also Lester v. Flournoy, 909 F.3d 708, 712 (4th Cir. 2018) (noting that petitioner could not meet § 2255(h)'s gatekeeping provisions because the case on which his claim was based was a "decision of statutory interpretation, not constitutional law"). Here, by contrast, Eye is raising constitutional, not statutory, questions. Therefore, he cannot meet Wheeler's requirements for use of the savings clause and § 2241. See Wheeler, 886 F.3d at 423; see also Jones, 226 F.3d at 333-34. Accordingly, the court lacks jurisdiction over Eye's final claims of error.

Based on the foregoing, the court concludes that it lacks jurisdiction over Eye's petition.

**V.**

For the reasons stated, the court will dismiss Eye's § 2241 petition without prejudice for lack of jurisdiction. See Wheeler, 886 F.3d at 424-25 (holding that § 2255(e) is jurisdictional).

**ENTER**: This 3rd day of August, 2021.

Michael F. Urbanski
Chief U.S. District Judge
2021.08.03 15:48:12 -04'00'

Chief United States District Judge

---

[9] United States v. Simmons, 649 F.3d 237 (4th Cir. 2011).

[10] Bailey v. United States, 516 U.S. 137 (1995).